**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rickye KIDD, Defendant-Appellant.**

**No. 82–1547.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1984.

Decided June 1, 1984.

---

**LEVI STRAUSS & CO., a Delaware corporation, Plaintiff-Appellant,**

v.

Leida Schoggen, Asst. U.S. Atty., San Jose, Cal., for plaintiff-appellee.

Richard M. Ewaniszyk, Pacific Grove, Cal., for defendant-appellant.

Before SNEED and FLETCHER, Circuit Judges, and ENRIGHT,* District Judge.

FLETCHER, Circuit Judge:

Kidd paid a U.S. Army private $300 to obtain three blank military dependent identification cards. He was convicted of bribing a public official in violation of 18 U.S.C. § 201(b)(3) (1982).

The evidence at trial supports the following version of the events: In December, 1980, Karen Johnson, a friend of Kidd's, telephoned James Alexander. Alexander worked in the Military I.D. Card Section at Fort Ord, California. Ms. Johnson put Kidd on the phone. Kidd asked Alexander if he could obtain some military identification cards. Alexander said he could not help him, and Kidd asked to speak to someone else. Alexander gave the phone to another person in the office, who also refused Kidd's request for I.D. cards. Eventually, the phone call was passed on to Private Etta White. Kidd told White that he would like to obtain three I.D. cards. White said she would do this for $300 if he would meet her at 4:30. He refused to meet her before 5:00 and told her to forget about the deal.

White told her superior officers about the conversation. A few minutes later, Kidd called back. On the order of her sergeant, White made arrangements to meet Kidd. Officers from the army's Criminal Investigation Division (CID) gave

her three identification cards and instructions. Kidd drove up to the meeting place and gave White $300 in exchange for the cards. He was immediately arrested by CID agents.

The CID officers released Kidd from custody without charging him. 15 months later, in March, 1982, they indicted, arrested, and arraigned him. He was tried in July, 1982.

At trial, defense counsel admitted that Kidd had given White money for the I.D. cards, but attempted to present a defense of entrapment. Counsel tried to show that federal and state law enforcement officials were out to get Kidd, and had taken a series of unconstitutional and unlawful actions in order to do so. The trial court, however, refused to admit evidence of alleged improper police conduct occurring in 1982 in relation to other cases involving Kidd, holding that it was immaterial. The trial court also concluded that the defense had failed to present any evidence of entrapment and refused to instruct the jury on entrapment. The jury convicted Kidd and the court sentenced him to the 15-year maximum prison term and a $20,000 fine.

*1. Jurisdiction.*

Kidd contends the district court lacked jurisdiction because Etta White, an army private, was not a "public official" within the meaning of section 201. Section 201 defines "public official" to include an "employee or person acting for or on behalf of the United States, or any department, agency, or branch of Government ...." 18 U.S.C. § 201(a). It prohibits corruptly offering anything of value to induce a public official "to do or omit to do any act in violation of his lawful duty...." 18 U.S.C. § 201(b)(3).

■ Kidd contends that a private, as opposed to an officer, is not included within the meaning of "public official." There is no support for this contention. Section 201(a) defines "public official" to include

* The Honorable William B. Enright, District Judge for the Southern District of California, sitting by designation.

any government employee. This court has held that even a warehouseman employed by the air force is a public employee within the meaning of section 201. *See Fulks v. United States*, 283 F.2d 259, 261 (9th Cir. 1960), *cert. denied*, 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961).

Section 201 was enacted as part of the same statute that includes 18 U.S.C. §§ 202 and 203, provisions regulating conflicts of interest. *See* Pub.L. 87–849, 76 Stat. 1119 (1962). Section 202 specifically excludes enlisted members of the armed forces from the scope of the terms "officer or employee" as used in the conflict of interest provision. Congress's failure to exclude enlisted persons from the scope of the bribery provision while excluding them from the conflict of interest provision supports the conclusion that it intended to include them.

■ Kidd argues that his conduct more properly comes within the scope of the conflict of interest provision. Section 203 prohibits offering or giving a public official compensation for services rendered in connection with a matter in which the United States has a direct and substantial interest. 18 U.S.C. § 203. In contrast to the bribery provision, section 203 does not require that the payment be made with a corrupt purpose or to induce unlawful acts. The government proved both of these elements. Kidd was appropriately charged under section 201; the fact that he could not have been charged with violating the conflict of interest provision of the statute does not affect his conviction for bribery, an entirely different offense.

■ Kidd also argues that because no statute charged Private White with any duty regarding identification cards, his payment to her does not come within the statute, which requires an inducement to act in violation of her lawful duties. *See* 18 U.S.C. § 201(b)(3). However, a "lawful duty" need not be one specifically imposed by statute. *See Cohen v. United States* 144 F.2d 984, 988 (9th Cir.1944) (interpreting predecessor statute), *cert. denied*, 323 U.S. 797, 65 S.Ct. 440, 89 L.Ed. 636 (1945).

### 2. Delay.

Kidd contends that the government deliberately delayed his indictment for 15 months after his initial arrest in order to prejudice his defense. He argues that this requires dismissal of the indictment under the Speedy Trial Act, the Fifth and Sixth Amendments, and Federal Rule of Criminal Procedure 48(b).

■ Because Kidd was released without being charged, the Speedy Trial Act, the Sixth Amendment, and Rule 48(b) do not apply to the preindictment delay. *See United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1981) (Sixth Amendment does not apply to preindictment delay after charges have been dropped); *United States v. Candelaria*, 704 F.2d 1129, 1131–32 (9th Cir.1983) (Speedy Trial Act does not apply until suspect has been charged); *United States v. Simmons*, 536 F.2d 827, 830 (9th Cir.) (Sixth Amendment does not apply to delay between commission of crime and indictment), *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976); Fed.R.Crim.P. 48(b) (applicable to delay in indicting "a defendant who has been held to answer to the district court"). Kidd relies on *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1971), which held that the Sixth Amendment regulates delay between arrest and indictment. *Dillingham* is distinguishable because, as the lower court opinion demonstrates, the defendant there had been held to answer at the time of his arrest and later released on bond. *See United States v. Palmer*, 502 F.2d 1233, 1234 (5th Cir.1974), *rev'd sub nom. Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975).

■ Delay prior to arrest or indictment may give rise to a claim of denial of due process. *See United States v. Lovasco*, 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977). In order to prove a Fifth Amendment due process violation, the defendant must show that the delay caused actual prejudice. If prejudice is shown, the court must then consider the

length and reasons for the delay. *See United States v. Carruth,* 699 F.2d 1017, 1019 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984); *United States v. Mays,* 549 F.2d 670, 677–78 (9th Cir.1977). The government has not offered any explanation for the delay. However, Kidd has not made a sufficient showing of prejudice to require examination of the government's reasons. Kidd argues that the unavailability of witnesses for discovery or trial constituted actual prejudice. In order to show prejudice because of witness unavailability, a defendant must show the substance of the missing witnesses' testimony and efforts made to locate them. *See United States v. Mills,* 641 F.2d 785, 788 (9th Cir.), *cert. denied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981). Kidd complains that Private White was not available for a pretrial interview. This was not due to the delay, but to the fact that she had been transferred out of California three weeks after the crime. Moreover, on cross-examination, she testified that she would have refused to talk to defense counsel if she had been available. There is no indication that her testimony would have been any different if she had been interviewed. Kidd also complains that Karen Johnson, who made the initial call to Alexander on Kidd's behalf, was unavailable to testify at trial. Kidd speculates that Johnson might have been able to support the entrapment defense, but this is only speculation. The facts show only that Johnson was acquainted with Alexander and that she made the initial call. There is nothing to suggest that she was cooperating with police in an attempt to entrap Kidd.

*3. Entrapment Instruction.*

■ The court must instruct on entrapment only if the evidence presents a genuine dispute as to whether the defendant was entrapped. *See United States v. Shapiro,* 669 F.2d 593, 598 (9th Cir.1982). To be entitled to an instruction, Kidd "must have offered some evidence of inducement or persuasion by someone who was a government agent, and some evidence contradicting the government's showing of predisposition." *Id.*

■ The trial court did not err in refusing to instruct on entrapment. Even if the jury had believed that Alexander initiated discussion of the sale of I.D. cards, there was no evidence that he had to overcome any reluctance on Kidd's part to go along with the scheme. "The lone fact that the Government or its agents made the initial contact is evidence only that the Government furnished the opportunity for the commission of the crime." *United States v. Glaeser,* 550 F.2d 483, 487 (9th Cir.1977). It does not show inducement or persuasion. *See Id.* The fact that CID agents were anxious to arrest Kidd is not evidence of government inducement because they did not become involved until after White had agreed, on her own initiative, to sell the cards.

*4. Evidence of Misconduct by State Police.*

At trial, defense counsel sought to prove that, in March of 1982, an investigator for the Monterey County District Attorney's office had coerced a witness to file a false affidavit in order to secure a search warrant for Kidd's home. The district court ruled that the evidence was irrelevant to the issue of entrapment. That ruling may be overturned only if the court abused its discretion. *See United States v. Brannon,* 616 F.2d 413, 418 (9th Cir.), *cert. denied,* 447 U.S. 908, 100 S.Ct. 2993, 64 L.Ed.2d 858 (1980).

■ The trial court was correct in concluding that misconduct by state officials in obtaining perjured affidavits in 1982 was not evidence that federal officials had entrapped Kidd 15 months earlier, particularly in the absence of any evidence of state involvement in Kidd's arrest by CID agents.

*5. Effective Assistance.*

To constitute ineffective assistance, the errors or omissions of trial counsel must prejudice the defense and "reflect a failure

to exercise the skill, judgment, or diligence of a reasonably competent defense attorney...." *Cooper v. Fitzharris*, 586 F.2d 1325, 1330 (9th Cir.1978) (en banc), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979).

Kidd contends defense counsel erred in bringing the case to trial. The government had offered a plea bargain of a three-year maximum sentence; after trial, the judge sentenced Kidd to fifteen years. Counsel admitted that Kidd had committed the offense and proposed to present a defense of entrapment. However, he was unprepared to present any evidence of entrapment.

It is true that counsel presented no evidence in Kidd's defense. Although he may have erred seriously in believing that he could create a sufficient doubt in the jury's mind about the government's conduct, his advice to Kidd to refuse the plea bargain was not incompetent. Counsel stated that his advice was based on his determination that a judge was not likely to impose a sentence after trial higher than that offered by the government. Although he turned out to be wrong, given the nature of the offense in this case, a reasonably competent counsel could not be expected to predict imposition of the maximum sentence.

*6. Use of Unconstitutionally-Seized Evidence.*

Kidd contends that some of the information in the presentence report, including a picture of Kidd with a large pile of money, was improperly considered in sentencing. He believes that the information was obtained in a search by the Seaside Police Department. A motion to suppress evidence obtained in that search was granted in the state court. He contends that such evidence may not properly be considered in sentencing. *See Verdugo v. United States*, 402 F.2d 599, 610 (9th Cir.1968), *cert. denied*, 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971); *see also United States v. Larios*, 640 F.2d 938, 941 (9th Cir.1981) ("the appropriate inquiry when determining whether the exclusionary rule should apply in a particular circumstance is to decide whether the rule's purpose of deterring unlawful police conduct would be sufficiently furthered by exclusion to outweigh any detrimental effects of excluding the evidence").

At the sentencing hearing, Kidd made no specific objection to use of the seized evidence. His counsel only mentioned that he believed the court could not properly consider some of the evidence in the presentence report. On the present record, it is impossible to determine what information in the presentence report, if any, was taken in the search and whether that search was unconstitutional. Kidd now contends police knowingly included false statements in the affidavit. The evidence was suppressed in state court on the ground that there was insufficient evidence in the affidavit to justify a nighttime search. The former defect would not justify exclusion of the evidence from sentencing. *Cf. United States v. Larios*, 640 P.2d at 942 (where illegality is caused by "technical error in the affidavit in support of the warrant .... police misconduct is not sufficient to justify interference with individualized sentencing").

The judgment of the district court is AFFIRMED.