**UNITED STATES of America, Plaintiff,**

v.

**BEETHOVEN ASSOCIATES LIMITED PARTNERSHIP, Second Biddle Associates Limited Partnership, Maryland Property Group, Inc., and Phyllis Steuffenberg, Defendants.**

No. 93 C 3163.

United States District Court,
N.D. Illinois, E.D.

Feb. 1, 1994.

Michele Marion Fox, U.S. Atty's Office, Chicago, IL, for U.S.

Leon Zelechowski, Karen T. Moses, Leon Zelechowski, Ltd., Chicago, IL, for Beethoven Associates Ltd. Partnership, Second Biddle Associates Ltd. Partnership.

Catherine Ward Bremer, Law Offices of Russell J. Fee, III, Oak Park, IL, for Maryland Property Group, Inc., Phyllis Steuffenberg.

### MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This case is premised on two complaints filed with the United States Department of Housing and Urban Development ("HUD") in June 1991. One of those complaints was filed by South Suburban Housing Center ("SSHC"), a fair housing and counseling organization, which alleged that the defendants violated the Fair Housing Act (the "Act"), 42 U.S.C. § 3601 *et seq.*, by interfering with SSHC's efforts to promote equal opportunity in housing and by interfering with SSHC's ability to provide advice and information on available housing to families with children in the south suburban Chicago area. The second complaint filed with HUD was brought by Al Razik ("Razik"), who alleged that the Defendants violated the Act by refusing to rent or negotiate for rental a three-bedroom apartment to him, his wife, and their four minor children.

The complaints were initially filed against Sunset Lake Apartments and the on-site manager, Phyllis Steuffenberg. In September 1991, HUD learned the names of the owners, Beethoven Associates and Second Biddle Associates, and named them as Defendants as well.

The Act prescribes certain administrative prerequisites to the bringing of formal enforcement proceedings. As an initial matter, an aggrieved individual must file a complaint with HUD identifying the alleged discriminatory practice. 42 U.S.C. § 3610(a). Once the administrative complaint is filed, HUD is obliged to notify the respondent of the complaint and conduct an investigation of the alleged discriminatory practice. 42 U.S.C. § 3610(a) and (b). HUD notified Beethoven and Second Biddle of the complaints in September, 1991 pursuant to 42 U.S.C. § 3610(a)(B)(ii).

After conducting its investigation, if HUD finds that reasonable cause exists to believe that a violation of the Act has occurred, HUD must issue a formal charge for further proceedings under the Act. 42 U.S.C. § 3610(g). Once such a charge is issued, any party may elect to have the matter resolved in a civil action, whereupon the Attorney General must commence an appropriate civil action. 42 U.S.C. § 3612(a) and (o). The Defendants have chosen to have the matter resolved before this court.

Section 3610(g)(1) of the Fair Housing Act requires the Secretary of HUD to make a determination whether reasonable cause to find a violation exists within 100 days of the filing of the complaint. 42 U.S.C. § 3610(g)(1). However, where it is impracticable to proceed at that pace, the Secretary may notify the respondents in writing of the reason for not doing so. Specifically, the Act states:

> The Secretary [of HUD] shall, within 100 days after the filing of the complaint ..., determine based on the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred ..., unless it is impracticable to do so.... If the Secretary is unable to make the determination within 100 days after the filing of the complaint ..., the Secretary

shall notify the complainant and respondent in writing of the reasons for not doing so.

42 U.S.C. § 3610(g)(1)

Ten days after filing the amended complaints, HUD notified Sunset Lake Apartments and Ms. Steuffenberg that processing of the complaint was delayed due to the need for additional information and analysis. (Exs. E, F to Plaintiff's Memo. in Opp.) Apparently, no further communication was sent to the Defendants until April 1, 1993, more than 539 days after the filing of the complaint, when HUD issued a finding of reasonable cause.

The Defendants have filed a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. They argue that HUD's failure to notify them within 100 days under section 3610 acts as a jurisdictional bar to proceeding in this case.

### Discussion

On a motion to dismiss, the court views the allegations of the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. *Dawson v. General Motors,* 977 F.2d 369, 372 (7th Cir.1992); *Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981). A complaint should not be dismissed with prejudice unless it appears beyond doubt that the plaintiff is unable to prove any set of facts consistent with the complaint which would entitle the plaintiff to relief. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). Unless otherwise provided by Rule 9 of the Federal Rules of Civil Procedure, facts need not be plead with particularity. *Leatherman v. Tarrant County Narcotics and Intelligence Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). However, we need not credit conclusions of law. *See Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir.1981); *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir.1979). *See also* 5A Charles Wright and Arthur Miller, *Federal Practice and Procedure,* § 1357 at 311–18 (2d ed. 1990). Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which

is essential to recovery. *Ellsworth v. Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citations omitted).

■ Lack of subject matter jurisdiction is appropriately raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(1). *Barnhart v. United States,* 884 F.2d 295, 296 (7th Cir. 1989), *cert. denied,* 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). Rule 12(b)(1) motions to dismiss in the civil rights context are scrutinized with special care, *Mercado v. Kingsley Area Schools/Traverse City Public Schools Adult Educ. Consortium,* 727 F.Supp. 335, 338 (W.D.Mich.1989), and are disfavored. *Mahoney v. NOW,* 681 F.Supp. 129, 135 (D.Conn.1987). Once questioned, however, it becomes the plaintiff's burden to establish that all jurisdictional requirements have been satisfied. *Kontos v. United States Dept. of Labor,* 826 F.2d 573, 576 (7th Cir. 1987).

■ Because the present motion sounds under 12(b)(1), lack of subject matter jurisdiction, we may consider matters outside of the pleadings. *See, e.g.* 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 1350 at 213 (2d ed. 1990) (citing *Kontos,* 826 F.2d at 576). Thus, we may look beyond the jurisdictional allegations in the complaint and view whatever evidence has been submitted in response to the motion. *Roman v. United States Postal Serv.,* 821 F.2d 382, 385 (7th Cir.1987).

The Defendants have moved to dismiss this case because HUD failed to comply with the 100–day limit of section 3610, which they regard as a jurisdictional requirement. They argue that HUD neither made a reasonable cause determination within one hundred days nor notified them in writing of the reasons for that failure. Judge Norgle has recently discussed the issue and sided with the Defendants, dismissing an essentially similar case involving the same Complainants because HUD failed to meet the requirements of § 3610(g)(1). *United States v. Aspen Square Mgmt.,* 817 F.Supp. 707 (N.D.Ill.1993). Unfortunately, Judge Norgle subsequently vacated his opinion, apparently pursuant to a settlement between the parties.

■ The question before us, then, is at least two-fold. First, we must determine whether HUD met the requirements of § 3610(g)(1). If not, we must determine whether HUD's failure to meet those requirements deprives us of jurisdiction to hear this matter.

On the record before us, it cannot be questioned that HUD fell far short of picture-perfect compliance with § 3610. Certainly, HUD failed to reach a reasonable cause determination within 100 days. The question is whether sending letters to the on-site manager, MS. Steuffenberg, on October 3, 1991, ten days after the amended complaint was filed, and telling her that processing the complaint is not yet completed, meets the requirements of the Act as to any or all Defendants.

There is no dispute that neither Beethoven nor Second Biddle were notified of the delay. The government has produced an affidavit of Douglas Coleman, a HUD employee charged with printing out the computer generated letters, to the effect that he printed out the letters to Steuffenberg on October 3, 1991. No more evidence has been presented that the letters were in fact mailed to Steuffenberg at the apartment complex. Once again we note that once jurisdiction is questioned, it becomes the plaintiff's burden to establish that all jurisdictional requirements have been satisfied. *Kontos,* 826 F.2d at 576.

The government argues that service on Ms. Steuffenberg, an agent of the Defendants, was sufficient service on all Defendants. Normally, we would tend to agree. However, there remains a myriad of problems. First, Defendants point out in their brief that by the time the October letters were mailed, Steuffenberg was no longer working at Sunset Lake Apartments. Second, the letters, mailed ten days after the amended complaint was filed, says nothing remotely like, "it is impracticable for HUD to make a reasonable cause determination on the complaint against you within 100 days of its filing." Mailed ten days after the complaint was filed, the letters simply said, processing has been "delayed," and that more information is needed.

We find that HUD's efforts, obviously the result of an automated system designed to nullify the 100–day limit in every case, failed to meet the requirements of § 3610 for many reasons. First, the contents of the letter and the time it was mailed give no indication to the recipient that HUD will not be able to reach a reasonable cause determination within the still-distant 100–day requirement. It merely indicates that HUD has not been able to resolve the case in ten days. Second, there is no indication that it was ever received by Steuffenberg, the addressee. Third, no attempt to notify Beethoven or Second Biddle was made.

HUD, like most federal agencies, including the courts, is overburdened, understaffed, and underfunded. However, that does not excuse HUD from meeting the requirements of federal law.

The remaining question is whether HUD's failure to meet the requirements of § 3610 is a jurisdictional bar to proceeding in this case. Judge Norgle, in his vacated opinion, found that it was. *Aspen Square Mgmt.*, 817 F.Supp. at 709.

The Seventh Circuit has addressed the issue of the precedential value of opinions that are vacated pursuant to consent decree. *In re Memorial Hosp.*, 862 F.2d 1299 (7th Cir.1988). In that case, the court held that the force of such an opinion does not "vanish on vacatur, although such an order clouds and diminishes the significance of the holding". *Id.* at 1302. Although we acknowledge the surviving significance of the *Aspen* opinion, this court respectfully disagrees with Judge Norgle's conclusion.

Defendants argue that HUD's failure to meet the requirements of section 3610 is a jurisdictional bar to plaintiff's claim, relying primarily on Judge Norgle's vacated opinion and the legislative history of the Act. The government, of course, takes the contrary position, premised on the plain language and purpose of the statute, and the weight of authority from other jurisdictions. We must agree with the government.

## I. *The Plain Language of Section 3610*

■ Of course, our first step in analyzing the meaning of section 3610 is to look at its language. Words in a statute are to be given their plain and ordinary meaning. *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807 (7th Cir.1988). The language of a statute controls when that language is sufficiently clear. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976).

■ There is nothing in the language of section 3610 that can fairly be construed as imposing a jurisdictional limit. The Fair Housing Act provides that "Upon the filing of such a complaint.... The Secretary shall make an investigation of the alleged discriminatory housing practice and complete such investigation within 100 days after the filing of the complaint ... unless it is impracticable to do so." 42 U.S.C. § 3610(a)(1)(B)(iv). The plain language of this section indicates that Congress anticipated situations in which the investigation could not be completed within 100 days, and qualified its mandate ("shall") with an exception ("unless").

Congress' intent is further evidenced by the requirements of the original section 3610 (Pub.L. 90–284), which was amended by the above-referenced section in 1988. The original section required the Secretary to investigate all claims within thirty days and provided no exceptions. Allowing 100 days indicates Congress' awareness of the need for a more flexible standard.

Perhaps more telling than what the language of the statute does say is what it does not. There is no language indicating that the 100–day deadline was intended to be jurisdictional. Section 3610(a)(1)(A)(i) provides that "An aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred, file a complaint with the Secretary alleging such discriminatory housing practice." This statement is an express time limit on the ability of aggrieved persons to bring claims. It contains no qualifying language. The ultimate sanction, loss of the claim, is applied when the complaint is not filed within the time limit imposed by the statute. No such sanction is mentioned as to HUD and its 100–day limit. To the contrary, the use of the qualifi-

er, "unless" provides an obvious hedge to be used by the agency when necessary.

Finally, Congress chose not to define the term "impracticable" in amending section 3610. Instead, when the investigation cannot be completed within 100 days, the amended section requires only that "the Secretary shall notify the complainant and respondent in writing of the reasons for not doing so." 42 U.S.C. § 3610(a)(1)(C). The statute does not require HUD to prove that it is impracticable to complete its investigation within 100 days, but only requires it to notify the parties of the need to continue its investigation beyond the 100–day period. In addition, there is no language in the Act that imposes a sanction on HUD for failure to notify the parties when it requires more than 100 days to investigate a claim. Thus, the language of section 3610, as amended, indicates Congress' attempt to provide a more workable framework in which HUD can function in enforcing housing discrimination claims.

## II. Purpose of the Fair Housing Act and Its Amendments

Congress enacted the Fair Housing Act as title VIII of the Civil Rights Act of 1968 to express a national policy against discrimination in housing. See Pub.L. No. 100–430, reprinted in, 1988 U.S.C.C.A.N. 2173, 2176. However, the Act provided for only a limited means of enforcing the law. The original Act was found to be ineffective because it lacked an effective enforcement mechanism. See S.Rep. No. 919, 96th Cong., 2d Sess. 10 (1980). The Fair Housing Amendments Act was passed in order to respond to the high costs of such litigation and the inordinate length of time involved before final resolution of these cases. H.R.Rep. No. 865, 96th cong., 2d Sess., at 5 (1980). Therefore, the purpose of the amendment was to expedite, not preclude, the claims of persons who are discriminated against. "Congress intended, in enacting the 100–day provision, to hasten, not foreclose, complainants' access to a forum." United States v. Curlee, 792 F.Supp. 699, 700 (C.D.Cal.1992) (construing section 3610's 100–day limit). If the 100–day limit is construed as a jurisdictional provision, the effect of that construction will be to bar those

with potentially valid claims from recovery because of HUD's delays. Such a result is patently inconsistent with the intent of the Fair Housing Act.

## III. Case Law

The full weight of the case law, with the exception of Judge Norgle's vacated opinion, supports the position of the government in this case. In Curlee, residents of an "adults only" mobile home park filed a complaint against the park's owner for discrimination based on familial status when they were asked to move following the birth of their first child. 792 F.Supp. 699.

Defendants moved to dismiss, based on HUD's failure to complete its investigation within 100 days of the filing of the complaint. HUD never sent notice to the parties of its need to extend the period of investigation beyond 100 days and it issued its determination seventeen months after the claim was filed. The Court denied defendant's motion, holding that the 100 day period is not mandatory and does not raise a jurisdictional issue. Id. at 700. The Curlee Court noted the absence of sanctions on HUD for failure to comply with the time period prescribed by the Act, the effect that such an interpretation would have on plaintiffs' rights, that such an interpretation would be contrary to Congress' intent, and that HUD's failure to meet the deadline had not significantly prejudiced the defendants. Id.

In United States v. Scott, 788 F.Supp. 1555 (D.Kan.1992), a complaint was filed on behalf of two homeowners against a group of neighboring property owners who interfered with the sale of the plaintiffs' home to an organization that operates group homes for disabled individuals. Defendants moved to dismiss based on HUD's failure to notify all of the defendants of the need to extend the time of the investigation, as well as failure to complete the investigation within the 100–day period. Nineteen of the thirty-one defendants in Scott were never notified of HUD's need to extend the time period of its investigation. In addition, HUD made its final determination more than ten months after the complaint had been filed. The Court, citing Curlee, found that the statutory

deadline imposed by § 3610 is not a *per se* time limitation as it contains a qualification in the term "impracticable." *Scott* 788 F.Supp. at 1558.

In determining that the 100–day limit was not jurisdictional, the court found the absence of statutory sanctions on HUD for violation of the time limits persuasive as to Congress' intent. The *Scott* court also considered the term "impracticable" to be a qualifier which takes the section out of the realm of mandatory provisions and prevents it from being construed as a jurisdictional provision. *Id.*

Other decisions, although not factually identical, are in accord with the *Curlee* and *Scott* decisions. In *Baumgardner v. HUD*, 960 F.2d 572 (6th Cir.1992), a complaint was filed against a rental agent based on gender discrimination. HUD did not commence the investigation until five months after the complaint was filed. Defendant filed a motion to dismiss, based on HUD's failure to complete the investigation within 100 days, as well as failure to comply with other procedural requirements. The administrative law judge found for the plaintiff and awarded damages. On appeal, the court held that "delay by HUD in investigation beyond 100 days does not constitute a violation of section 3610 nor the regulations thereunder.... There is an implied 'good cause' basis for extending the period for investigation beyond 100 days." *Baumgardner*, 960 F.2d at 578.

Similarly, in *United States v. Forest Dale, Inc.*, 818 F.Supp. 954 (N.D.Tex.1993), a complaint, and two subsequent amended complaints, were filed against the defendant landlord for discrimination based on physical disability. Shortly after the last amended complaint was filed, HUD notified the parties that the investigation was not complete. HUD issued charges against the landlord more than nineteen months after the original complaint was filed, and four months after the last amended complaint was filed. Defendants moved for summary judgment,

based in part on the fact that The *Forest Dale* court held that the statutory framework of section 3610 "explicitly allows HUD to extend its investigation of complaints beyond 100 days provided that HUD notifies the parties and states the reasons for the delay". *Forest Dale*, 818 F.Supp. at 966.

## IV. *Analogous Statutes*

Aside from the plain language of the Act itself, the purpose of the Act, and the persuasive precedent supporting our finding that the 100–day limit does not present a jurisdictional bar or statute of limitations, analogous language in other statutes has been interpreted by the Supreme Court to be nonjurisdictional. In fact, the Supreme Court's holding that similar language in the Comprehensive Employment and Training Act was not jurisdictional is perhaps the most compelling of the authorities cited in this opinion.

In *Brock v. Pierce County*, 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986), the Court held that the Comprehensive Employment and Training Act's (CETA) mandate that the Secretary of Labor "shall" issue a final determination as to the misuse of CETA funds within 120 days did not constitute either a jurisdictional prerequisite or a statute of limitations. In so finding, the Court quoted the "great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." *Brock*, 476 U.S. at 260, 106 S.Ct. at 1839 (quoting *United States v. Nashville, C. & St. L.R. Co.*, 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81 (1886)). That statement of policy is equally applicable in the present case. As the Court noted in *Brock*, "[w]e would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." *Brock*, 476 U.S. at 260, 106 S.Ct. at 1839.[1]

---

1. Further, very similar language in Title VII requiring the EEOC to make a reasonable cause determination within 120 days has been interpreted so that failure of the EEOC to comply is not fatal to the complaint. *Tuft v. McDonnell* Douglas Corp., 517 F.2d 1301, 1307 (8th Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976); *EEOC v. Johnson Co.*, 421 F.Supp. 652, 654–55 (D.Minn.1975).

## 1264

### V. *Prejudice*

 Despite the overwhelming weight of authority contrary to their motion, the Defendants have one final arrow in their quiver. They argue, without supporting authority, that because Beethoven Partnership has entered bankruptcy since the HUD complaint was filed, it is prejudiced by HUD's delay. As an initial matter, we note that "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir. 1990); *Bob Willow Mtrs. v. General Mtrs. Corp.,* 872 F.2d 788, 795 (7th Cir.1989). This court has neither the time nor the inclination to do the Defendants' research for them. *Pelfresne,* 917 F.2d at 1023; *Sanchez v. Miller,* 792 F.2d 694, 703 (7th Cir.1986); *Paulitz v. City of Naperville,* No. 89 C 8855, slip op. at 9, 1994 WL 22963 (N.D.Ill. January 24, 1994).

Further, we are unpersuaded by the merits of the argument that, because the bankruptcy proceeding has taken away some of the Defendants' flexibility in settling the matter, HUD's delay has unduly prejudiced them. A similar argument could be made against any creditor that did not present its claim until the debtor filed for bankruptcy, and we reject it.

### *Conclusion*

We hold that the 100–day limit of section 3610 is neither a jurisdictional bar nor a statute of limitation. Accordingly, Defendant's motion to dismiss is denied.