UNITED STATES of America, Plaintiff,

v.

**Earl H. NALLY; Ruth A. Nally; Warren Gillette; and Benona Gillette, Defendants.**

**No. C–94–0477 MHP.**

United States District Court,
N.D. California.

Oct. 6, 1994.

Order Granting Summary Judgment
Nov. 8, 1994.

---

Michael J. Yamaguchi, U.S. Atty., Mary Beth Uitti, U.S. Atty's. Office, San Francisco, CA, Paul F. Hancock, James P. Turner, William B. Senhauser, U.S. Dept. of Justice, Housing & Civil Enforcement, Civil Rights Div., Washington, DC, for plaintiff.

Christopher M. Neumeyer, Harland Law Firm, Eureka, CA, for defendants.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiff United States brought this action under the Fair Housing Act, 42 U.S.C. § 3612(*o*), against defendants, landlords Earl and Ruth Nally ("the Nallys"), and managers Warren and Benona Gillette ("the Gillettes"), on behalf of tenants who allege that defendants discriminated against them on the basis of familial status. Now before the court is defendants' motion for summary judgment on the basis that the Secretary of Housing and Urban Development ("the Secretary") failed to comply with statutorily mandated procedures under 42 U.S.C. §§ 3610(a) and 3610(g).

Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

## BACKGROUND [1]

On or about January 10 and March 15, 1991, respectively, Brian Johnsgard and Sue Corley, and Ronald Sanchez and Lamoyne Brown ("complainants") filed complaints with the United States Department of Housing and Urban Development ("HUD") alleging that defendants, the owners and managers of Nally's Recreational Vehicle Park ("Nally's RV Park"), discriminated against them on the basis of family status in violation of the Fair Housing Act.

During February, March and April of 1991 HUD investigator Robert Zurowski investigated the complaints, including interviewing all four defendants, their attorney, and tenants of Nally's RV Park. Defendants informed Zurowski that they evicted Johns-

gard and Corley for nonpayment of rent and violating park rules, and that they evicted Sanchez and Brown for violating park rules.

Investigator Zurowski and his immediate supervisors in HUD's Region IX Office of Fair Housing and Equal Opportunity signed the Final Investigative Reports for the complaints on September 3 and 4, 1991. On August 30, 1993 HUD's Regional Counsel for Region IX issued Determinations of Reasonable Cause and Charges of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging defendants with engaging in discriminatory housing practices. Because HUD was unable to serve defendants Warren and Benona Gillette, HUD and defense counsel stipulated to dismiss those charges without prejudice on October 13, 1993 in order to permit HUD to locate and serve the Gillettes.

On December 13, 1993 HUD again issued Charges of Discrimination against all defendants. On or about January 10, 1994 Lamoyne Brown and the defendants elected to have the matter resolved in federal district court. The administrative action was again dismissed and this complaint was filed on February 9, 1994. Defendants now move for summary judgment on all claims.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a

---

1. Except as otherwise indicated, all facts in this section are taken from the Joint Statement of Undisputed Facts submitted by the parties.

dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations, *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

## DISCUSSION

Under the Fair Housing Act, an aggrieved person alleging a discriminatory housing practice may file a complaint with the Secretary of HUD. 42 U.S.C. § 3610(a). Upon receipt of the complaint, the Secretary must attempt conciliation of the complaint. *Id.* at § 3610(b). If unable to effectuate conciliation, the Secretary must (1) conduct an investigation into the alleged discriminatory housing practice, and (2) determine whether reasonable cause exists to believe that such practice has occurred or is about to occur. *Id.* at §§ 3610(a)(1)(B)(iv), 3610(g)(1). The Secretary must do so within 100 days after the filing of a complaint "unless it is impracticable." *Id.* at §§ 3610(a)(1)(C), 3610(g)(1). If the Secretary is unable to complete this investigation and determination within the 100 days, "the Secretary shall notify the complainant and respondent in writing of the reasons for not doing so." *Id.* Following each investigation the Secretary must file a "final investigative report." *Id.* at § 3610(b)(5)(A).

Defendants claim that the Secretary failed to complete its investigation into this matter within the required 100 days and failed to issue a notice to defendants explaining the delay. Defendants argue that failure to comply with these requirements warrants summary judgment in their favor because the language of the statute is mandatory, and further, because defendants were seriously prejudiced by the delay.

In response, the government concedes that it was unable to complete its investigation within the 100 day period. However, the government alleges that HUD sent letters to the parties apprising them of this fact, as required by the statute. Defendants deny having received the letters. The government further argues that the 100–day time limit is not mandatory, and that defendants are not substantially prejudiced by HUD's delay.

The question before the court is two-fold. The first question is whether HUD complied with the statutory notification requirements; if there is significant probative evidence that the notification requirement was met, summary judgment on this ground must be denied. The second question is whether, if the statutory requirements were not met, such failure precludes HUD from further pursuing an action against the defendants.

A. *Requirement of Notification of Impracticability*

■ Under the plain language of section 3610, if it is impracticable for HUD to meet the 100–day deadline, it is required to do only one thing: notify the parties of this fact. HUD is not required to prove the impracticability. *United States v. Beethoven Associates Ltd.*, 843 F.Supp. 1257, 1262 (N.D.Ill. 1994). Moreover, the statute on its face does not require the notification letter *itself* to be sent within the 100 days, but only that the notification letter be sent. As well, neither the legislative history nor HUD's regulations indicate that the notification letter must be sent within the 100–day period. *See* 24 C.F.R. §§ 103.225, 103.400(c)(1); Pub.L. No. 100–430, *reprinted in*, 1988 U.S.C.C.A.N. 2173, 2194–96; cf. 24 C.F.R. § 103.405(b) ("Within three business days after the issuance of the charge, the General Counsel shall ... serve the charge...."). *But see Baumgardner v. Secretary of HUD*, 960 F.2d 572, 578 (6th Cir.1992) (noting with disapproval HUD's failure to notify defendant of delay within 100 days of filing of complaint).

Evidence produced by the government reveals that on April 22 and June 24, 1991 HUD mailed letters informing the defendants of its inability to meet the 100–day investigation and determination deadline. Declaration of Douglas A. Coleman ¶ 4. The government also has submitted a certified computer printout verifying the dates these letters were sent, as well as certified copies of the letters themselves. *Id.* at ¶ 5 and

Attachments. Defendants deny ever having received the letters. Accordingly, the court must determine if mailing the letters alone satisfies the statute's notification requirement, or if actual receipt is required. This issue appears to be a question of first impression under this statute.

Section 3610 itself does not specify the method of notification, other than that it must be "in writing." 42 U.S.C. §§ 3610(a)(1)(C) and (g)(1). HUD has interpreted these provisions by promulgating regulations providing that, if it is unable to meet the 100–day period, "HUD will notify the aggrieved person and the respondent, *by mail,* of the reasons for the delay." 24 C.F.R. §§ 103.225, 103.400(c)(2) (emphasis added). Thus, under the regulations, HUD notifies defendants by mail; the question remains however, whether it satisfies the notice requirement merely by placing the notice in the mail or whether defendants must actually *receive* it. Both the statute and the regulations are silent on this question. However, if Congress intended to require actual receipt of the notification letters, it could have made the requirement explicit as it has done in other sections of the Fair Housing Act. *See e.g.,* 42 U.S.C. § 3612(a) ("The election [of civil action] must be made not later than 20 days *after the receipt* by the electing person of service . . .") (emphasis added). Having failed to so specify, Congress has left the statute open to interpretation.

While "the general rule is that *where legal consequences are effective upon notice,* the notice must be received in fact and not merely mailed," *United Steel Workers of America v. Bell Foundry Co.,* 626 F.2d 139, 141 (9th Cir.1980) (emphasis added), such is not the case where notice has no such legal consequences. The Fair Housing Act's impracticability notice requirement is unlike the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f), which mandate that the Equal Employment Opportunity Commission notify a claimant of the dismissal of a claim, and that the claimant

bring suit within ninety days of receiving the "right-to-sue" letter.[2] Title VII's ninety-day requirement constitutes a statute of limitations, and therefore generally does not begin until the time the letter is *actually received* by the claimant or a member of his or her household. *See Scholar v. Pacific Bell,* 963 F.2d 264, 267 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992) (finding that claimant was given notice when claimant's daughter received and signed for it). Unlike Title VII's notice requirements however, the Fair Housing Act's impracticability notification does not trigger a statute of limitations, or have any other legal consequence. Therefore, the requirement of actual receipt of the notification cannot be implied.

▮▮▮ For the foregoing reasons, the court holds that proof that the impracticability notice was mailed is sufficient to satisfy the notification requirements of sections 3610(a)(1)(C) and (g)(1). The government has offered proof sufficient to establish that it mailed the notification to defendants. Because such mailing extends the 100–day deadline for investigation and reasonable cause determination, defendants' motion for summary judgment must be denied. Indeed, absent evidence contradicting the government's evidence on this issue, summary judgment should be entered for the government that the statutory requirement for the impracticability notice has been satisfied.

### B. *Effect of Time Limit for Investigation and Reasonable Cause Determination*

Sections 3610(a)(1)(B)(iv) and (g)(1) provide that the Secretary "shall," within 100 days after the filing of the complaint, complete the investigation and make its reasonable cause determination "unless it is impracticable to do so". If reasonable cause is found, the Secretary "shall" issue a charge "immediately." 42 U.S.C. § 3610(g)(2)(A). The complaints of unlawful housing discrimination in this case were filed on or about

---

**2.** 42 U.S.C. § 2000e–5(f)(1) provides in part:
  If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission . . . the Commission . . . shall so notify the person aggrieved and within nine-

ty days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved. . . .

January 10 and March 15, 1991. Thus the 100–day period expired on approximately April 19 and June 10, 1991 respectively. The final investigative reports for the complaints were signed on September 3, and 4, 1991, roughly three months and five months past the 100–day deadline. Determinations of Reasonable Cause and Charges of Discrimination were issued on August 30, 1993 and again on October 13, 1993, over two years past the 100–day deadline.

Defendants contend that Congress' use of the word "shall" indicates a statutory mandate, such that the 100–day time limit is a jurisdictional prerequisite. Defendants argue that because the 100–day deadline was not met, and because they never received the impracticability notice, summary judgment must be granted in their favor. The government responds that the plain language and purpose of the Act lead to the conclusion that HUD's failure to meet the 100–day time limit is not a jurisdictional bar to this action.

In support of their argument that use of the word "shall" makes the 100–day deadline jurisdictional, defendants cite *City of Edmonds v. United States Dep't of Labor,* 749 F.2d 1419 (9th Cir.1984), and *Pierce County v. United States,* 759 F.2d 1398 (9th Cir. 1985). Defendants fail to mention, however, that *Pierce County* was reversed by the United States Supreme Court in *Brock v. Pierce County,* 476 U.S. 253, 266, 106 S.Ct. 1834, 1842, 90 L.Ed.2d 248 (1986), in which the Court squarely held that mere use of the term "shall" in a statutory time limit does not "divest the Secretary of jurisdiction to act after that time." *Brock* also effectively reversed *City of Edmonds. See Brock,* 476 U.S. at 257, 106 S.Ct. at 1837. Defendants also cite *Sierra Pacific Indus. v. Block,* 643 F.Supp. 1256 (N.D.Cal.1986), but fail to mention that on appeal, the Ninth Circuit emphasized that " '[g]overnment agencies *do not lose jurisdiction* for failure to comply with statutory time limits.' " *Sierra Pacific In-*

*dus. v. Lyng,* 866 F.2d 1099, 1111–12 (1989) (emphasis added) (quoting *Brock,* 476 U.S. at 259, 106 S.Ct. at 1838).

The plain language of section 3610 qualifies its 100–day limit with an "impracticability" exception. With this exception, Congress anticipated that there would be times where the 100–day deadline could not be met. *See United States v. Beethoven Assoc.,* 843 F.Supp. 1257, 1261 (N.D.Ill.1994). Therefore, the use of the phrase "unless it is impracticable" also indicates that the 100–day deadline is not mandatory. *Baumgardner,* 960 F.2d at 578; *United States v. Curlee,* 792 F.Supp. 699, 700 (C.D.Cal.1992); *United States v. Forest Dale,* 818 F.Supp. 954, 966 (N.D.Tex.1993). Moreover, nothing in the language of the statute indicates that the 100–day time limit is jurisdictional: there is no express or implied sanction for failure to meet this deadline, unlike, for example, the deadline for private parties or the Attorney General to initiate a civil action as contained in sections 3613 and 3614, or the time limit for filing a complaint in section 3610(a)(1)(A)(i) ("not later than one year after an alleged discriminatory housing practice has occurred...."). In *Beethoven Assoc.,* the court noted that the unqualified one-year period for filing a complaint is "an express time limit on the ability of aggrieved persons to bring claims" and that failure to comply triggers the "ultimate sanction, loss of the claim." 843 F.Supp. at 1261. On the other hand, the 100–day deadline, with its qualifying "impracticable" language, has no corresponding sanction. *Id.; see also Curlee,* 792 F.Supp. at 700.[3]

Furthermore, the purpose and policy behind the Fair Housing Act is to vindicate the civil rights of complainants who are subject to housing discrimination. *See* Pub.L. No. 100–430, *reprinted in,* 1988 U.S.C.C.A.N. 2173, 2176. In 1988, Congress enacted the 100–day provisions "to hasten, not foreclose,

---

**3.** Courts have considered similar language in Title VII that requires a reasonable cause determination within 120 days "so far as practicable." 42 U.S.C. § 2000e–5(b). The cases have concluded that failure to comply with this time limit is not fatal to the complaint. *See EEOC v. Occidental Life Ins. Co.,* 535 F.2d 533, 536 (9th Cir.

1976), *aff'd,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *Tuft v. McDonnell Douglas Corp.,* 517 F.2d 1301, 1307 (8th Cir.1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976); *EEOC v. Johnson Co.,* 421 F.Supp. 652, 654 (D.Minn.1975).

complainants' access to a forum." *Curlee,* 792 F.Supp. at 700. If the courts were to construe the 100–day limit as a jurisdictional requirement, many potential claimants would be deprived of recovery under the Act solely because of HUD's delays. *Beethoven Assoc.,* 843 F.Supp. at 1262; *Curlee,* 792 F.Supp. at 700; *see also United States v. Scott,* 788 F.Supp. 1555, 1559 (D.Kan.1992). Such a result would be inconsistent with the Act's purpose, especially in consideration of the "great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." *Brock,* 476 U.S. at 260, 106 S.Ct. at 1839 (holding that the Comprehensive Employment and Training Act's requirement that the Secretary of Labor "shall" take action within 120 days was not jurisdictional) (citation omitted).

For the foregoing reasons, even assuming that HUD did not meet the 100–day notification requirement, the court finds that that deadline itself is neither a jurisdictional bar nor a statute of limitations. Therefore, failure to meet the deadline, with or without the impracticability notice, does not warrant summary judgment for defendants here.

### C. *Prejudice*

Defendants also argue that HUD's delay past the 100–day limit has substantially prejudiced their defense in this action. Specifically, defendants argue that because the Gillettes have moved to southern California and are of advanced age and in poor health, it would be difficult for them to travel to this district to participate in their defense. Declaration of Christopher M. Neumeyer ¶ 11.[4] Defense counsel claims that during a communication on October 14, 1993, Benona Gillette stated that because of the almost-three years since the alleged acts of discrimination, she has forgotten many of the details concerning the complainants' evictions. Neumeyer Dec. ¶ 11. Defendants also argue that a proper defense cannot be effected because key witnesses have moved out of the area. These

witnesses are office manager Debbie Creel, and various residents of Nally's RV Park who allegedly observed complainants' behavior. Neumeyer Dec. ¶¶ 15–17.

The government responds that HUD's delay has not substantially prejudiced defendants' ability to defend this action. The government notes that defendants received a copy of the initial complaints shortly after they were filed, along with information advising them as to the nature of and procedures surrounding the complaint. The government also argues that defendants have not provided sufficient evidence of the substance of the missing witnesses' testimony and any efforts made to locate them to show prejudice.

■ A court has discretionary equitable powers to dismiss a suit when an agency's delay or failure to comply with a procedural rule has substantially prejudiced the defendant's position. *See generally, American Farm Lines v. Black Ball,* 397 U.S. 532, 538, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970); *see also Baumgardner,* 960 F.2d at 578; *Forest Dale,* 818 F.Supp. at 966; *Curlee,* 792 F.Supp. at 700–701. For defendants to be entitled to summary judgment on these grounds, there must be no genuine issue of fact concerning the prejudicial effect of HUD's delay.

■ Defendants fail to establish serious prejudice due to key witnesses moving away. "In order to show prejudice because of witness unavailability, a defendant must show the substance of the missing witnesses' testimony and efforts made to locate them." *United States v. Kidd,* 734 F.2d 409, 413 (9th Cir.1984). Besides counsel's detailing his inability to locate his own client, defendants make no showing whatsoever of their efforts to find the witnesses. Further, defendants make only an indirect and speculative showing as to the substance of the absent witnesses' testimony, namely that several residents of Nally's RV Park witnessed both the park policies and complainants' behavior. Such speculation does not constitute a sufficient showing of prejudice. *Id.* Further-

---

**4.** Counsel for defendants also claims that he has not spoken with the Gillettes since January 1994, is now unable to contact them, and is unsure

whether he possesses a valid telephone number or address for them. Neumeyer Dec. ¶ 14.

more, defendants make no showing as to the potential substance of Debbie Creel's testimony.

Defendants claim that Benona Gillette has forgotten many details of the evictions. However, defendants have submitted a copy of a facsimile dated the same day this claim was made, purportedly from the Gillettes, that is entitled "Reasons for evicting Johnsgard/Corley and Sanchez/Brown" and contains numerous details regarding their evictions. Neumeyer Dec., Ex. B, Letter from Warren and Benona Gillette to Chris Neumeyer at 1–2. Thus, defendants' own evidence negates their claim of prejudice that too much time has passed for the Gillettes to recall relevant details.

█ Lastly, defense counsel asserts that Benona Gillette informed him that the Gillettes are now 76 and 77 years old "and that both Gillettes have heart problems and other ailments which make travel difficult." Neumeyer Dec. ¶ 11. Counsel baldly reasserts these statements in the motion and again in the reply, and claims that the Gillette's ages and health "would not allow their participation in this case." The unsworn statements of Benona Gillette are insufficient to support defendants' claim of substantial prejudice, and do not constitute a basis for summary judgment. *See Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 667 (9th Cir.1980). Furthermore, witnesses who may not be able to attend a trial in this district may testify by way of deposition.

Although the court recognizes there has been some delay on the part of HUD, the evidence fails to show that the prejudice to defendants is so substantial as to warrant summary judgment on this basis. However, defendants also argue that the Gillettes managed Nally's RV Park only from October 1990 to October 1991 and have since moved hundreds of miles away. These facts are not disputed by the government, and it is apparent that the government's complaint erroneously alleges that the Gillettes have been the resident managers of Nally's RV Park from October 1990 to *the present.* Complaint ¶ 5. Therefore, there may be a question as to the practicality of the Gillettes remaining as defendants in this litigation, instead of merely being witnesses.

*CONCLUSION*

For the foregoing reasons, it is hereby ordered that defendants' motion for summary judgment is DENIED; within twenty (20) days of the date of this order, the court will grant summary judgment in favor of plaintiff on the issues of notice and jurisdiction as set forth above, unless defendants submit evidence placing these issues in material dispute.

The court further ORDERS defendants to submit a declaration within twenty (20) days of the date of this order clarifying the current relationship of defendants Gillettes to the subject property, Nally's RV Park, and a declaration from plaintiff as to why, if the Gillettes are no longer involved with the property, they should remain party-defendants.

IT IS SO ORDERED.

## SUPPLEMENTAL MEMORANDUM AND ORDER

Plaintiff United States brought this action under the Fair Housing Act, 42 U.S.C. § 3612(*o*), against defendants, landlords Earl and Ruth Nally ("the Nallys"), and property managers Warren and Benona Gillette ("the Gillettes"), on behalf of tenants who allege that defendants discriminated against them on the basis of familial status.

On October 6, 1994 this court denied defendants' motion for summary judgment, finding that the Secretary of Housing and Urban Development ("the Secretary") complied with procedures under 42 U.S.C. §§ 3610(a) & 3610(g). The court held that proof of mailing of the impracticability notice was sufficient to satisfy the requirements of sections 3610(a)(1)(C) and (g)(1), and furthermore that the 100–day deadline set forth in those sections was neither a jurisdictional bar nor a statute of limitations. The court ordered that unless defendants submitted evidence placing the issues of notice and jurisdiction in material dispute within twenty (20) days of the date of the order, the court would grant summary judgment in favor of plaintiff on those issues.

The court further ordered defendants to submit a declaration within twenty (20) days of the date of the order clarifying the current relationship of the Gillettes to the subject property, Nally's RV Park, and a declaration from plaintiff as to why, if the Gillettes are no longer involved with the property, they should remain party-defendants.

Plaintiff filed a declaration on October 26, 1994, setting forth its reasons for retaining the Gillettes as defendants in this action. To date, however, defendants have not filed anything in response to this court's order—neither a declaration as to the Gillette's relationship to Nally's RV Park, nor evidence on the issues of notice and jurisdiction.

Accordingly, for the reasons set forth in this court's October 6, 1994 order, the court hereby GRANTS plaintiff summary judgement on the issues of notice and jurisdiction. Further, the court hereby ORDERS defendants to submit a declaration within ten (10) days of the date of this order clarifying the Gillettes' current relationship to Nally's RV Park. *If such declaration is not filed within ten days, all evidence favorable to the Gillettes with regard to their relationship to Nally's RV Park will be excluded from future proceedings.*

IT IS SO ORDERED.