UNITED STATES of America, Plaintiff,

v.

ASPEN SQUARE MANAGEMENT CO., INC.; Harold Grinspoon; Johnson Real Estate Investors; and Illinois Candlewood Limited Partnership, Defendants.

No. 92 C 7579.

United States District Court, N.D. Illinois, E.D.

March 3, 1993.

Judgment Vacated and Case Dismissed June 28, 1993.

Michele Marion Fox, U.S. Atty's Office, Chicago, IL, John R. Dunne, Atty. General's Office, Paul F. Hancock and Joseph D. Rich, U.S. Dept. of Justice, Housing & Civ. Enforcement Section, Washington, DC, for plaintiff.

J. Stuart Garbutt and Joseph E. Tilson, Katten, Muchin & Zavis, Chicago, IL, for defendants.

### ORDER

NORGLE, District Judge.

Before the court is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the following reasons defendants' motion is granted.

### DISCUSSION

This case is premised on three complaints filed with the United States Department of Housing and Urban Development ("HUD") in June, 1991. Two of those complaints were filed by South Suburban Housing Center ("SSHC"), a fair housing and counseling organization, which alleged that the defendants violated the Fair Housing Act (the "Act"), 42 U.S.C. § 3601 *et seq.*, by interfering with SSHC's efforts to promote equal opportunity in housing and by interfering with SSHC's ability to provide advice and information on available housing to families with children in the south suburban Chicago area. The third complaint filed with HUD was brought by Al Razik ("Razik"), who alleged that the defendants violated the Act by refusing to rent or negotiate for rental a three-bedroom apartment to him, his wife, and their four minor children.

According to the complaints filed with HUD, the defendants' apartment complexes enforced certain occupancy limits whereby no more than "one person per bedroom plus one" could reside in any unit. In accordance with these rules, no more than two persons were permitted to rent a one-bedroom unit; no more than three persons could rent a two-bedroom unit; and no more than four persons could rent a three-bedroom unit. Since the complaints were filed with HUD, however, the occupancy limits have been increased to permit two occupants per bedroom in all units. The defendants have moved to dismiss this case on the grounds that their alleged conduct did not violate the Act and because HUD failed to comply with the requirements of the Act.

According to the government's complaint, SSHC and Razik filed their respective complaints in June, 1991. After conducting an investigation, the Secretary of HUD determined that reasonable cause existed to believe that the defendants had committed discriminatory housing practices. Accordingly, on September 22, 1992, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination pursuant to § 3610(g)(2)(A) of the Act, charging the defendants with violations of §§ 3604(a), (b), and (c).

 Lack of subject matter jurisdiction is appropriately raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(1). *Barnhart v. United States,* 884 F.2d 295, 296 (7th Cir. 1989), *cert. denied,* 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). Rule 12(b)(1) motions to dismiss in the civil rights context are scrutinized with special care, *Mercado v. Kingsley Area Schools,* 727 F.Supp. 335, 338 (W.D.Mich.1989), and are disfavored. *Mahoney v. National Org. for Women,* 681 F.Supp. 129, 135 (D.Conn.1987). Once questioned, however, it becomes the plaintiff's burden to establish that all jurisdictional requirements have been satisfied. *Kontos v. U.S. Dept. of Labor,* 826 F.2d 573, 576 (7th Cir.1987). In this context, it is proper for the court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in response to the motion. *Roman v. United*

*States Postal Serv.*, 821 F.2d 382, 385 (7th Cir.1987).

The defendants' motion to dismiss claims that the Secretary's September 22 issuance exceeded the time limit statutorily provided for the determination of whether an incident of housing discrimination occurred. The Act prescribes certain administrative prerequisites to the bringing of formal enforcement proceedings. As an initial matter, an aggrieved individual must file a complaint with HUD identifying the alleged discriminatory practice. 42 U.S.C. § 3610(a). Once the administrative complaint is filed, HUD is obliged to notify the respondent of the complaint and conduct an investigation of the alleged discriminatory practice. 42 U.S.C. § 3610(a) and (b). After conducting its investigation, if HUD finds that reasonable cause exists to believe that a violation of the Act has occurred, HUD must issue a formal charge for further proceedings under the Act. 42 U.S.C. § 3610(g). Once such a charge is issued, any party may elect to have the matter resolved in a civil action, whereupon the Attorney General must commence an appropriate civil action. 42 U.S.C. § 3612(a) and (*o*).

In addition to specifying the administrative framework necessary to bring a fair housing discrimination action, the Act also specifies certain time limits within which the Secretary must proceed. Specifically, the Act states:

> The Secretary [of HUD] *shall,* within 100 days after the filing of the complaint . . ., determine based on the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred . . ., unless it is impracticable to do so. . . . *If the Secretary is unable to make the determination within 100 days after the filing of the complaint . . ., the Secretary shall notify the complainant and respondent in writing of the reasons for not doing so.*

42 U.S.C. § 3610(g)(1) (emphasis added). Similar timeliness requirements are set forth in §§ 3610(a)(1)(B)(iv) and 3610(a)(1)(C) of the Act, and HUD's own regulations twice restate these requirements. *See,* 24 CFR ch. 1, §§ 103.225 and 103.400(c).

■ The explicit requirements of the Act compel HUD to make a determination as to probable cause within 100 days after the complaint's filing or to provide a written explanation for its inability to do so. According to the complaint *sub judice,* the SSHC and Razik allegations were filed with HUD between June 17 and June 21, 1991. Thus, HUD's determination of reasonable cause, issued September 22, 1992, was processed more than 350 days after the expiration of the time period proscribed by the Act.

■ The plaintiff claims that HUD's delay in completing its investigation did not violate either the Act or HUD's own regulations. In support of this argument, the plaintiff cites the statutory exception to the 100–day period, which allows HUD to continue its investigation whenever it is "impracticable" to complete it within 100 days. Congress' use of the term "impracticable" removes the 100–day period from the realm of mandatory action; such removal, however, is qualified by the second sentence of § 3610(g)(1). Thus, delay beyond 100 days is permitted only so long as the Secretary notifies the defendants of the reasons for the delay. 42 U.S.C. § 3610(g)(1); *see, Baumgardner v. Secretary, United States Dept. of Housing & Urban Dev.,* 960 F.2d 572, 578 (6th Cir.1992).

■ The plaintiff asserts that to enforce the 100–day limitation period as a time bar "would be to cut off the enforcement powers of the United States and complainants' rights, contrary to the purpose of the [Act]." *United States v. Curlee,* 792 F.Supp. 699, 700 (C.D.Cal.1992) ("HUD's inability to complete its investigation of notify defendants within 100 days after the filing of the complaints . . . is non-jurisdictional and has not caused significant injury or prejudice to the defendants"). Although the 100–day provision of the Act may have been enacted to augment HUD's enforcement powers and to provide effective, less costly procedures to vindicate complainants' civil rights, *United States v. Scott,* 788 F.Supp. 1555, 1557–59 (D.Kan. 1992), it is nevertheless a limitation period, and limitation periods are ultimately "established to cut off rights, justifiable or not, that might otherwise be asserted." *Kavanagh v.*

*Noble*, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947). "Remedies for resulting inequities are to be provided by Congress, not the courts." *Id.*

Furthermore, the plaintiff's argument ignores the statutory exception to the 100–day period. Congress recognized that there may be circumstances in which HUD's investigations may not be completed, and reasonable cause determination made, within the proscribed 100–day period, and this recognition is manifested in the "impracticability" exception. *See* 54 Fed.Reg. 3264. Although the Act repeatedly admonishes HUD to meet the 100–day deadline, HUD is free to disregard the limitation period if compliance is impracticable, but it must also explain in writing the impracticability. Failure to require compliance with either the 100–day limitation period or the impracticability notice would eviscerate the meaning of both provisions.

A statute must be construed as a whole rather than relying on one word, phrase or sentence in the statute. *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Berman v. Schweiker*, 713 F.2d 1290, 1305 (7th Cir.1983). In reading both sentences of § 3610(g)(1) as optional, the government has ignored the cardinal principle of statutory construction that "in construing statutes [the court] is obligated to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

The most logical and well-reasoned legal interpretation of § 3610(g)(1), and the interpretation most consistent with Congressional intent, is that HUD must either determine reasonable cause within 100 days from the filing of a complaint or provide written notice to the respondent explaining the impracticability of doing so. In the instant case, HUD has failed to meet the 100–day limitation period of the Act and has failed to timely provide a written explanation for its reasons for doing so.[1] Requiring the defen-

dants to expend time and money to defend an action unreasonably filed over 350 days after the statutory limitation period would be grossly unfair to the defendants and would unjustifiably ignore the explicit language of the Act. Accordingly, defendants' 12(b)(1) motion to dismiss for lack of jurisdiction based on HUD's failure to comply with the requirements of the Act is granted.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is granted.

IT IS SO ORDERED.

---

1. The only inference provided by the government regarding HUD's delay is that HUD has received thousands of complaints under the Act. The plaintiff does not allege that this information was timely provided to defendants, and, nevertheless, such general reference to department-wide workload does not explain the delay in this case. It is not enough for a governmental bureaucracy to offer its own caseload to defeat the Congressional directive to do its job on behalf of all citizens.