**UNITED STATES of America, Plaintiff,**

v.

**GORMAN TOWERS APARTMENTS; Gorman Towers, Inc.; et al., Defendants.**

**Civ. No. 94–2094.**

United States District Court, W.D. Arkansas, Fort Smith Division.

July 15, 1994.

Deborah Fennell Groom, Asst. U.S. Atty., Fort Smith, AR, for plaintiff.

Sam Sexton, Jr., Fort Smith, AR, for defendants.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case is currently before the court on the defendants' motion to dismiss. This case arises from a housing discrimination complaint filed, pursuant to the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq.*, with the U.S. Department of Housing and Urban Development (HUD) by Robert Gregory and Helen Gregory. The initial telephonic complaint was filed on January 8, 1993. This complaint was amended and affirmed on April 14, 1993, and on February 14, 1994.

Robert Gregory is paralyzed from the chest down as a result of an automobile accident. Helen Gregory, Robert Gregory's mother, suffers from chronic immune system ailment, anxiety and severe depression. It is alleged that the defendants violated the provisions of the Fair Housing Act by failing to provide a designated parking space for the vehicle Robert Gregory and Helen Gregory share. Robert Gregory and Helen Gregory both occupied apartments at the Gorman Towers Apartments in Fort Smith, Arkansas.

In accordance with the enforcement scheme created by the Fair Housing Act, HUD investigated the complaints and found on April 13, 1994, reasonable cause to believe that discriminatory housing practices had occurred. 42 U.S.C. § 3610(g). A charge of discrimination was then issued. 42 U.S.C. § 3610(g)(2)(A). The defendants elected to have the allegations of the charge determined in a civil action. 42 U.S.C. § 3612(a). A civil action was filed by the United States of America on May 18, 1994. Gorman Towers Apartments, Gorman Towers, Inc., Sam Sexton, Jr., Donna Sexton, Sue Watson, Powell Sanders, Jess Riley, Sam (Chip) Sexton, III, Ruth Wolfe, and Rental Management Company are named as defendants. Gorman Towers Apartments are owed by the corporation, Gorman Towers, Inc. Sam Sexton, Jr., is the president of the board of directors of Gorman Towers, Inc., and president of Rental Management Company. Donna Sexton is executive vice president of Rental Management Company and the property manager of Gorman Towers Apartments. Sue Watson is the resident manager of the apartments. Powell Sanders, Jess Riley, Sam (Chip) Sexton, III, and Ruth Wolfe are directors of Gorman Towers, Inc. Rental Management Company is the management agent for Gorman Towers Apartments.

Defendants have now moved to dismiss this action on three separate grounds. First, defendants contend the court lacks subject matter jurisdiction over this action because no final investigative report was made by the Secretary of HUD within 100 days of the date on which the complaint was made to the agency. In this regard, defendants state they were never advised that more than 100 days would be required to complete the investigation. Second, defendants argue the complaint fails to state a cause of action and the court lacks subject matter jurisdiction because the complaint was time barred at the time that it was made with HUD. Third, defendants argue the complaint fails to state a cause of action and the court lacks jurisdiction over the subject matter against the individual corporate directors because (1) the complaint makes no allegation of discrimination or other wrong-doing on the part of the individual corporate directors; (2) the complaint does not allege that the individual corporate directors were directors at the time of the conduct at issue; and (3) the final investigative report only names the corporate directors and makes no specific allegations regarding their conduct, knowledge, or participation in the events at issue.

The administrative enforcement procedures are contained in 42 U.S.C. § 3610. The statute in relevant part provides as follows:

**(a) Complaints and answers**

(1)(A)(i) An aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated, file a complaint with the Secretary alleging such discriminatory housing practice....

\*　　\*　　\*　　\*　　\*　　\*

[ (1)(B) ](iv) the Secretary shall make an investigation of the alleged discriminatory housing practice and complete such investigation within 100 days after the filing of the complaint ... unless it is impracticable to do so.

(C) If the Secretary is unable to complete the investigation within 100 days after the filing of the complaint ... the Secretary shall notify the complainant and respondent in writing of the reasons for not doing so.

\*　　\*　　\*　　\*　　\*　　\*

**(e) Prompt judicial action**

(1) If the Secretary concludes at any time following the filing of a complaint that prompt judicial action is necessary to carry out the purposes of this subchapter, the Secretary may authorize a civil action for appropriate temporary or preliminary relief pending final disposition of the complaint under this section....

\*　　\*　　\*　　\*　　\*　　\*

**(g) Reasonable cause determination and effect**

(1) The Secretary shall, within 100 days after the filing of the complaint ... determine based on the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is

about to occur, unless it is impracticable to do so, or unless the Secretary has approved a conciliation agreement with respect to the complaint. If the Secretary is unable to make the determination within 100 days after the filing of the complaint ... the Secretary shall notify the complainant and respondent in writing of the reasons for not doing so.

42 U.S.C. § 3610.

■ Defendants first argue that the court has no jurisdiction over this matter because HUD did not complete its investigation within 100 days and failed to notify them in writing of the reasons for this failure. In support, the defendants cite *United States v. Aspen Square Management Co.*, 817 F.Supp. 707, 709 (N.D.Ill.1993) and *Baumgardner v. Secretary, United States Department of Housing and Urban Development*, 960 F.2d 572 (6th Cir.1992).

In opposition the plaintiff contends that the procedural error does not warrant dismissal in the absence of prejudice to the defendants. It is pointed out that the statute allows the investigation to exceed 100 days whenever it is impracticable to complete the investigation within the 100 days. The government argues that to read the 100–day provision as a time bar would cut off the government's enforcement powers and complainants' rights by judicial amendment. The government states that it has received thousands of complaints under the amended Fair Housing Act since its effective date of March 12, 1989. It is suggested that impracticability may arise from the demands of a heavy agency caseload as well as from the complexity of a particular case.[1] Additionally, we are informed HUD notified the defendants by letter on April 22, 1993, that the need for additional information and analysis delayed its processing of the complaint. The letter stated: "This is to advise you that the processing of the subject complaint is not complete. Processing of the subject complaint was delayed due to the need for additional information and analysis." HUD has pointed to no further communication regarding the delay in the investigation between the April, 1993, letter and the April, 1994, decision. HUD citing, *inter alia,* the Administrative Procedure Act, 5 U.S.C. § 706(2)(D) argues that its noncompliance constitutes harmless error.

Defendants rely primarily on *United States v. Aspen Square Management Co.*, 817 F.Supp. 707, 709 (N.D.Ill.1993). In *Aspen Square* the court was faced with identical arguments. The court there held that "Congress' use of the term 'impracticable' removes the 100–day period from the realm of mandatory action; such removal, however, is qualified by the second sentence of § 3610(g)(1). Thus, delay beyond 100 days is permitted only so long as the Secretary notifies the defendants of the reasons for the delay." *Id.* at 709. The court noted that "[f]ailure to require compliance with either the 100–day limitation period or the impracticability notice would eviscerate the meaning of both provisions." *Id.* at 710. The court concluded that "[t]he most logical and well-reasoned legal interpretation of § 3610(g)(1), and the interpretation most consistent with Congressional intent, is that HUD must either determine reasonable cause within 100 days from the filing of a complaint or provide written notice to the respondent explaining the impracticability of doing so." *Id.* at 710. The defendant's motion to dismiss was granted. However, the *Aspen Square* case was later vacated. *United States v. Aspen Square Management Co., Inc.*, No. 92 C 7579, 1993 WL 268352 (N.D.Ill. June 29, 1993).

The remaining case law on this point indicates that the 100 day limit does not operate as a jurisdictional bar. The Court of Appeals for the Sixth Circuit has on two occasions discussed whether HUD's procedural noncompliance with the 100–day investigative period is a basis for dismissal. In *Baumgardner v. Secretary, United States Department of Housing and Urban Development*, 960 F.2d 572 (6th Cir.1992) the court found there "is an implied 'good cause' basis for extending the period for investigation beyond 100 days." *Id.* at 578. In view of the fact that the extension was not lengthy and little actu-

---

1. HUD is required to report annually the number of instances in which it fails to complete the investigation of a complaint within 100 days. 42 U.S.C. § 3608(e)(2)(B)(i).

al prejudice resulted from the delay, the court concluded there was no basis for dismissal. *Id.*

The Sixth Circuit next addressed these provisions in *Kelly v. Secretary, United States Department of Housing and Urban Development,* 3 F.3d 951 (6th Cir.1993). In that case the court quoting from the House Report on the 1988 amendments, adding the 100–day limit for completing the investigation of complaints, noted the statutory scheme contemplated that only in exceptional cases would the investigation extend beyond the 100–day limit. The court stated:

> [w]e understand, of course, that the principal purpose of both the original and amended Acts is to vindicate the rights of persons who suffer discrimination in housing. Nevertheless, those against whom complaints are made are entitled to fair treatment as well. Of course, we do not want to penalize the complainant for HUD's errors. Nevertheless, we must exercise a balance that clearly has been lacking in this case.

*Id.* at 957.

It was noted that the case before the court was not an exceptional case but the court agreed with the Administrative Law Judge that any delay did not prejudice the defendant as far as the finding of a violation was concerned. Other violations existed in the *Kelly* case. In particular the court found HUD had failed to provide an opportunity for fair and reasonable conciliation. The case was remanded to HUD for conciliation. If conciliation failed and the case was returned to the ALJ, the court noted that "in no case should damages be assessed for the period during which HUD completely neglected this case." *Id.* at 958.

Perhaps the most comprehensive discussion of this issue is contained in *United States v. Beethoven Associates Ltd. Partnership,* 843 F.Supp. 1257 (N.D.Ill.1994). There the court reviewed the statutory language, the purpose of the Fair Housing Act and its amendments, the case law, and analogous statutes. The court first addressed whether HUD had met the requirements of § 3610(g)(1). The court concluded that HUD had fallen far short of compliance with

§ 3610. The court then addressed the question of "whether sending letters to the on-site manager, ... ten days after the amended complaint was filed, and telling her that processing the complaint is not yet completed, meets the requirements of the Act as to any or all Defendants." *Id.* at 1260. The court found "that HUD's efforts, obviously the result of an automated system designed to nullify the 100–day limit in every case, failed to meet the requirements of § 3610 for many reasons" including its failure to include anything remotely like "its impracticable for HUD to make a reasonable cause determination on the complaint against you within 100 days of its filing." *Id.* at 1260–61.

The court then examined the statutory language noting there was nothing in "the language of section 3610 that can fairly be construed as imposing a jurisdictional limit." *Id.* at 1261. Next, the court noted that the purpose of the Fair Housing Act and its amendments was to

> expedite, not preclude, the claims of persons who are discriminated against. If the 100–day limit is construed as a jurisdictional provision, the effect of that construction will be to bar those with potentially valid claims from recovery because of HUD's delays. Such a result is patently inconsistent with the intent of the Fair Housing Act.

*Id.* at 1262. The court then went on to review the relevant case law noting that the full weight of the case law, with the exception of the vacated opinion in *Aspen Square,* supported the government's position. *Id.* Finally, the court noted that the Supreme Court has interpreted analogous statutes as non-jurisdictional. *Id.* at 1263, *citing, Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986) (concluding the Comprehensive Employment and Training Act's (CETA's) mandate that the Secretary of Labor issue a final determination as to the misuse of CETA funds within 120 days did not constitute either a jurisdictional prerequisite or a statute of limitations). The court concluded that "the 100–day limit of section 3610 is neither a jurisdictional bar nor a statute of limitation." *Id.* at 1264. *See also United States v. Forest Dale, Inc.,* 818

F.Supp. 954 (N.D.Tex.1993); *United States v. Curlee,* 792 F.Supp. 699 (C.D.Cal.1992); *United States v. Scott,* 788 F.Supp. 1555 (D.Kan.1992).

We find the reasoning in these cases persuasive and hold that the 100–day period set forth in section 3610 does not operate as a jurisdictional bar. Defendants alternatively argue that even if the 100–day limit does not act as a jurisdictional bar the circumstances of this case dictate a dismissal in view of the length of the delay and the resulting prejudice. In particular, it is argued there appears to be no reason for the 460 day delay in processing the complaint and that memories have dimmed, witnesses have moved from the area or have died. In the court's view, dismissal based on prejudice to the defendants is not warranted under the facts presented in the motion to dismiss.

Additionally, defendants appear to question whether the conciliation efforts were adequate. In this regard defendants merely state "[t]he investigative report contains a notation that conciliation failed, but the report contains no suggestion as to what HUD may have done to encourage conciliation, a duty imposed by statute on HUD." This issue is not further discussed or briefed. For that reason, we decline to address this point.

■ Defendants next basis for dismissal is that the statute of limitations acts as a total bar to the present claim. Specifically, defendants argue the complaint fails to state a cause of action and the court lacks subject matter jurisdiction because the complaint was time barred at the time that it was made with HUD.

Section 3610(a)(1)(A)(i) provides "[a]n aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated, file a complaint with the Secretary alleging such discriminatory housing practice." Prior to the 1988 amendments an aggrieved person was required to file a complaint "within one hun-

dred and eighty days after the alleged discriminatory housing practice occurred." The House Report concerning the amendments indicated the phrase "or terminated" was "intended to reaffirm the concept of continuing violations, under which the statute of limitations is measured from the date of the last asserted occurrence of the unlawful practice." H.R.Rep. 711, 100th Cong., 2d Sess. at p. 33 (1988), U.S.Code Cong. & Admin.News 1988, at pp. 2173, 2194.

Defendants point out that the complaint alleges the discriminatory practice commenced eighteen months prior to August or September of 1992.[2] As the housing discrimination complaint was not filed until January 8, 1993, defendants argue the action is barred.

As plaintiff points out, the complaint also alleges that on or about September 15, 1992, Robert Gregory and Helen Gregory had a conference with Donna Sexton, property manager of Gorman Towers, at which time the complainants asked for a designated parking place. This request was refused. The refusal is alleged to constitute discrimination in refusing to make reasonable accommodation in rules, policies, practices, or services, when such accommodation is necessary to afford the complainants equal opportunity to use and enjoy the apartment complex. 42 U.S.C. § 3604(f)(3)(B). *See also* 24 C.F.R. § 100.204(b).

Clearly the September, 1992, refusal, if a refusal occurred, occurred within one year of the filing of the complaint with HUD. Additionally, the court believes this is the type of practice that constitutes a continuing violation. This is a far different type of practice than an alleged discriminatory refusal to rent or sell which was at issue in the case cited by defendants.

■ Finally, defendants argue the complaint as against Powell Sanders, Jess Riley, Sam (Chip) Sexton, III, and Ruth Wolfe should be dismissed for failure to state a

---

**2.** Defendants note that § 3610 speaks in terms of "an alleged discriminatory housing practice." Defendants point out that the complaint makes no contention that the complainants are members of any class of aggrieved persons and makes

no allegations that the claimed practice affects any persons other than Robert and Helen Gregory. A discriminatory housing practice is defined as an "act that is unlawful under section 3604, 3605, 3606, or 3617 of this title."

claim upon which relief can be granted. According to the complaint these defendants are directors of Gorman Towers, Inc. It is contended that the complaint does not allege that the directors participated in, authorized, condoned or had any knowledge of any alleged discriminatory housing practice. Further, it is pointed out that the complaint fails to allege that these defendants were directors at the times complained of in the complaint. As this is a type of civil rights cause of action, defendants argue that vicarious liability does not exist and only those engaging in prohibited actions incur liability.

 The cases defendants cite in support of this latter argument are cases decided under the provisions of 42 U.S.C. § 1983. Cases decided under the Fair Housing Act indicate that the duty of a property owner not to discriminate is non-delegable. *Walker v. Crigler*, 976 F.2d 900 (4th Cir.1992). Furthermore, if it is established that the agent of a defendant has engaged in discriminatory conduct in violation of the Act, the defendant will be held liable. *Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir.1992), *cert. denied,* ⸺ U.S. ⸺, 113 S.Ct. 2961, 125 L.Ed.2d 662 (1993). " 'As a matter of well-settled agency law, a principal may be held liable for the discriminatory acts of his agent if such acts are within the scope of the agent's apparent authority, even if the principal neither authorized nor ratified the acts.' " *Id.* at 1096, *quoting, Coates v. Bechtel,* 811 F.2d 1045, 1051 (7th Cir.1987).

■ These principles have been applied routinely to fair housing cases. *Chicago,* 982 F.2d at 1096. It is clear that the overriding societal priority of the provision of 'fair housing through out the United States' clearly set out in the Fair Housing Act, "requires that 'the one innocent party with the power to control the acts of the agent, the owner of the property or other responsible superior, must act to compensate the injured party for the harm, and to ensure that similar harm will not occur in the future.' " *Id.* at 1097, *quoting Walker v. Crigler,* 976 F.2d 900, 904 (4th Cir.1992). For these reasons we must reject defendants arguments.

For the reasons stated, the defendants' motion to dismiss will be denied.