**UNITED STATES of America, Plaintiff,**

**v.**

**Jaime and Graciela BARBERIS, et al., Defendants.**

**No. K–94–2106.**

United States District Court, D. Maryland.

May 25, 1995.

---

Lynne A. Battaglia, U.S. Atty., Baltimore, MD, Paul F. Hancock, Christine Ladd, and Barbara Kammerman, U.S. Dept. of Justice, Washington, DC, for plaintiff.

Jeffrey W. Harab, Rockville, MD, for defendants Jaime and Graciela Barberis, Michael Horwatt, McLean, VA, for defendant Lewis & Silverman, Inc., etc., and Suzanne Levin, Rockville, MD, for defendant Gioia Mueller.

### MEMORANDUM AND ORDER

KAUFMAN, Senior District Judge.

(1) Reference is hereby made to defendants' motions to dismiss and to all other filings in this case. For the foregoing reasons, defendants' motions to dismiss are denied.

(2) Plaintiff, the United States of America, filed a complaint on behalf of Mr. Gilmore Thompson, ("Thompson"), a black male, pursuant to § 812(*o*) of the Fair Housing Act ("FHA").[1] Defendants Jaime and Graciela, husband and wife, are residents of Ecuador and are owners of a four (4) bedroom house located at 12 Leonard Court, Rockville, Maryland ("the Leonard Court house"). Defendant Lewis and Silverman, Inc. ("Lewis & Silverman") was, in August 1989, a Maryland corporation. It is now doing business in Maryland under the name of Long & Foster Real Estate, a Virginia Corporation. Defendant Gioia Mueller ("Mueller) was, in August 1989, an agent of Lewis & Silverman. Jurisdiction is exists pursuant to 28 U.S.C. § 1345 and 42 U.S.C. § 3612(*o*).

(3) On or about June 19, 1989, the Barberises signed a "Property Management and Exclusive Rental Agreement" with Lewis &

---

1. *See* 42 U.S.C. § 3612(*o*).

Silverman through Lewis & Silverman's agent, Mueller, for the house which the Barberises owned on Leonard Court. At all relevant times, Lewis & Silverman was acting for the Barberises as the property manager for the Leonard Court house. In August, 1989, Rosalie Coghill ("Coghill"), a real estate agent employed by Dale Denton Realty, showed the Leonard Court house to Thompson, who was seeking to rent a home for himself and his family. The Thompsons desired to move to the area involved from the U.S. Virgin Islands, and were interested in residing in the Leonard Court house. Accordingly, Thompson tendered the requested rent and the appropriate security deposit, and also signed a lease. After so doing, Mueller indicated that Mr. and Mrs. Barberis orally had agreed to rent the house to Thompson and his family. Subsequently, however, the Barberises refused to sign the lease, allegedly because they learned that the Thompson family was black.[2]

In October, 1989, Thompson, at the suggestion of Coghill, met with Richard Allen ("Allen"), executive director of Suburban Maryland Fair Housing, Inc., to discuss the events surrounding his attempted rental of the Leonard Court house. In June, 1990, Thompson timely filed a complaint with the United States Department of Housing and Urban Development ("HUD") pursuant to 42 U.S.C. § 3610(a).[3] In the said complaint, Thompson alleged that Mr. and Mrs. Barberis had refused to rent the house to Thompson because of his race. In August, 1990, Thompson amended his complaint to add familial status as an additional basis of discrimination.[4] Both the complaint and the amended complaint indicate that Thompson knew that Mueller and Lewis & Silverman existed. However, Thompson did not name either of them in the complaint or in the August 1990 amended complaint. On November 28, 1990 a HUD investigator talked, via telephone, with Allen to establish an interview date with Allen and Thompson. During that telephone call, the participants discussed the possibility of Thompson further amending the administrative complaint to add Lewis & Silverman and Mueller.[5] On December 11, 1990, Thompson and Allen met with the HUD investigator to discuss the cases.[6] During the course of that meeting, Thompson and the HUD investigator discussed the possibility of adding Mueller and Lewis & Silverman as defendants.[7] On that same day, that is, December 11, 1990, Thompson amended his complaint to add Roger Dreeben, President of Lewis & Silverman ("Dreeben") and Mueller.[8] On December 14, 1990, HUD sent a letter to "Roger Dreeben, President, Lewis & Silverman Realtors" and to "Gioia Mueller, Property Manager, Lewis & Silverman Realtors" notifying them that they had been named as respondents in a housing discrimination complaint.[9] After agreeing to extensions, an answer was filed on January 25, 1991 on behalf of Lewis & Silverman and Mueller.[10] Both before and after January 25, 1991, counsel for Lewis & Silverman communicated with HUD on behalf of Dreeben and Lewis & Silverman.[11]

HUD, pursuant to the requirements of 42 U.S.C. §§ 3610(a) and (b), completed an investigation of Thompson's complaint, unsuccessfully attempted conciliation, and prepared a final investigative report.[12] On June

---

2. *See* Final Investigative Report at 2. *See also* Determination of Reasonable Cause and Charge of Discrimination at ¶¶ 20 and 21.

3. *See* Government's April 3, 1995 filing at A–1. A companion case was filed by Suburban Maryland Fair Housing, Inc. on August 28, 1990. Through HUD's conciliation process, the companion case was ultimately settled.

4. *Id.* at A–5.

5. *Id.* at B–4.

6. Thompson's case and the Suburban Maryland Fair Housing case were consolidated for investigative purposes at about this time.

7. *Id.* at B–6.

8. *Id.* at A–9.

9. *Id.* at A–10 and A–11.

10. *Id.* at C–16.

11. *See Id.* at C–12; C–14; C–15; C–16; C–29; C–31–34.

12. The investigative report contains a detailed synopsis of the investigation into the merits of this case, including, but not limited to, interviews with different witnesses; dates upon which certain letters were mailed and/or received; and

2, 1994, HUD, pursuant to 42 U.S.C. §§ 3610(g)(1) and (2)(A), issued a charge of discrimination based upon the investigative record. That charge indicated that reasonable cause existed to believe that discriminatory housing practices had occurred. On or about June 28, 1994 Lewis & Silverman elected to have the charge resolved in a civil action in federal court pursuant to 42 U.S.C. 3612(a). Following that election, the United States commenced the within action pursuant to 42 U.S.C. § 3612(*o* ).

■■■ (4) This Court, in a Memorandum and Order dated May 2, 1995, notified the parties that due to the presence of materials outside the pleadings, it would treat defendants' motions to dismiss as motions for summary judgment. Accordingly, the parties were directed to submit materials for this Court to consider in proper Rule 56 form. A party is entitled to summary judgment provided that there is no genuine issue of material fact. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Under the applicable standards, the non-moving party is entitled to have "all reasonable inferences ... drawn in [its] respective favor." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir.1987). The party resisting summary judgment bears the burden to "go beyond the pleadings and by [its] own affidavits, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■■ (5) In its motion to dismiss, Lewis & Silverman argues that because it was never named in the administrative complaint, this Court has no jurisdiction over it. While it is true that complainant Thompson never named Lewis & Silverman in the administrative complaint, Roger Dreeben, president of Lewis & Silverman, was named in the amended complaint. Dreeben is not named as a defendant in the within case in this Court. The record clearly indicates that

Lewis & Silverman was on notice of the pending action; answered the administrative complaint on behalf of Dreeben; corresponded with HUD; and elected to go forward with the civil action.[13] In Title VII cases, courts are reluctant to bring parties, who were not named in the administrative complaint, into the federal court action. However, exceptions have been granted when, as is seemingly true in the within case, the defendant had notice of the administrative proceedings and participated therein. *See* 2 Larson, *Employment Discrimination*, 2d. Ed., § 49.11(c)(2) (1995). Because Lewis & Silverman participated in the administrative process on behalf of Dreeben and Mueller, it cannot now claim that it was never "formally" notified of the suit.

■■ (6) Irrespective of whether Lewis & Silverman was named in the complaint, "[u]nder the Fair Housing Act, a corporation ... '[is] responsible for the acts of a subordinate employee [in violation of the Act], even though these acts were neither directed nor authorized.'" *Saunders v. General Services Corp.*, 659 F.Supp. 1042, 1059 (E.D.Va.1987) (*citing Harrison v. Otto G. Heinzeroth Mortgage Co.*, 430 F.Supp. 893, 897 (N.D.Ohio 1977)). *See also Walker v. Crigler*, 976 F.2d 900, 904 n. 5 (4th Cir.1992). Consequently, Lewis & Silverman can seemingly be held liable under the FHA for the acts of its officers and/or employees, Dreeben and Mueller, even if it cannot be held so liable for the reasons set forth in paragraph (5), *supra.*

■■ (7) Lewis & Silverman and Mueller argue that they were named as defendants outside the one year statute of limitations period and, therefore, the within action against them should be dismissed. Specifically, Lewis & Silverman and Mueller argue that because Thompson knew, or should have known, about the alleged discriminatory roles of the respective defendants and chose not to add them to the initial administrative complaint, they cannot be added to the administrative complaint at a later date. However,

conciliation discussions. While the details of that investigation may prove important in the ultimate resolution of this case, this Court need not, and does not, focus upon all aspects of the

investigative report in the current summary judgment context.

**13.** *See* notes 10 and 11, *supra.*

42 U.S.C. § 3610(a)(1)(D) permits a complaint to be amended "at any time." Section 3610(a)(1)(D)(2)(A) allows those who are not named in the complaint as respondents, but who are identified "in the course" of the investigation, to be named as respondents at a later date. HUD regulations permit free amendment of an administrative complaint "at any time" and provide that any amendments, including the addition of respondents, will be considered as having been made at the original filing date. *See* 24 C.F.R. § 103.42. HUD regulations also provide that HUD give ten (10) days notice after an individual has been *added* to the complaint. *See* 24 C.F.R. § 103.50. Based on the code and its implementing regulations, HUD argues that Lewis & Silverman and Mueller were properly added to the administrative complaint and, therefore, are properly before this Court.

Defendants' argument is seemingly based on the one section of the statute which refers to those identified "in the course of investigation." In *United States v. Forest Dale, Inc.*, 818 F.Supp. 954 (N.D.Tex.1993), however, the court focused on 42 U.S.C. § 3610(a)(1)(D) and allowed the later named parties to be before the court, even though those parties were seemingly known at the time the initial administrative complaint was filed but were not named therein. *Id.* at 961–62, 965. The code and its implementing regulations appear to make two references vis-a-vis adding respondents. One reference is to amended complaints in general; the other is to amended complaints which add, as respondents, those identified "in the course of investigation." While Lewis & Silverman and Mueller imply that the code *only* permits adding respondents when they are identified during an investigation, there is seemingly nothing in the code or in the regulations to support that approach. The statute and reg-

ulations appear to allow the adding of additional respondents who were known at the time when the complaint was filed but were, for some reason, not named at the time of filing.[14]

The facts in this case support allowing Lewis & Silverman and Mueller to be deemed appropriately added. In his affidavit, Thompson states that he intended, at the time he first discussed and filled out his complaint with Allen of Suburban Maryland Housing Authority, Inc. in October 1989, to charge Lewis & Silverman and Mueller.[15] Thompson, however, believes that that initial complaint was somehow lost.[16] After Thompson determined his original complaint had been lost, he met with Allen again to file another complaint. Allen informed Thompson that the administrative complaint could be amended at any time.[17] Thompson understood that it was most important to get the complaint filed and that the HUD process would help him determine against whom the case should be filed.[18] Further, Thompson states that when he filed his complaint, he "believed that both Lewis & Silverman and Ms. Mueller had discriminated against [him]."[19] Thompson states that he "discussed with Richard Allen naming Lewis & Silverman and Ms. Mueller in the complaint. However, Mr. Allen thought it was safer to allow the HUD investigator to investigate the case and to amend the complaint if the investigation indicated that others were responsible."[20] Thompson followed Allen's advice, and immediately after Thompson met with the HUD investigator for his initial interview, Thompson named Lewis & Silverman and Mueller in the amended complaint.

Lewis & Silverman and Mueller have been *formally* aware of the case since December 14, 1990. They were served official notice by HUD and they participated in the adminis-

---

14. Lewis & Silverman and Mueller argue that they were not notified within ten days of identification as required by 24 C.F.R. § 103.50. However, the record clearly indicates that Lewis & Silverman and Mueller were notified, in writing, three days after Thompson amended the complaint. *See* Government's April 3, 1995 filing at A–10 and A–11.

15. *See* Thompson affidavit at ¶ 3.

16. *Id.*

17. *Id.* at ¶ 4.

18. *Id.*

19. *Id.* at ¶ 5.

20. *Id.* at ¶ 7.

trative process. The statute and implementing regulations indicate that amended complaints relate back to the time of filing. *See* 24 C.F.R. § 103.42. Mueller argues that any relation back is unfair under *Weisgal v. Smith,* 774 F.2d 1277 (4th Cir.1985). Mueller argues that the relation back provisions of the C.F.R. should be analogized to Federal Civil Rule 15(c) which is designed to apply to a civil complaint filed in federal district court, not to administrative complaints. Under the *Weisgal* standard, therefore, the plaintiff must show: 1) "the same transaction or occurrence; 2) [that] the new party had notice of the action prior to [limitations expiring]; and 3) [that the new party] knew or should have known that but for a mistake in identity the action would be brought against [it]." *Id.* at 1279 (*citing Watson v. Unipress, Inc.,* 733 F.2d 1386 (10th Cir.1984)). However, those factors seem to raise factual questions. In the present summary judgment record of this case, there is sufficient showing by the United States to meet those standards, plus the absence of any prejudice to defendants Lewis & Silverman and Mueller.

■ (8) The FHA requires HUD to issue a reasonable cause charge within one hundred (100) days of filing the administrative complaint. All of the defendants argue that because HUD did not issue its reasonable cause charge until nearly four (4) years after the complaint was filed, this Court has no jurisdiction and the case must be dismissed. The FHA's 100 day requirement is followed by the words "unless it is impracticable to do so." 42 U.S.C. § 3610(a)(1)(B)(iv). In a letter, accompanied by an appropriate affidavit, Ira Goldstein ("Goldstein"), the director of HUD's Fair Housing Enforcement Center, attempts to explain the reasons that it took more than 100 days to complete the investigation.[21] Goldstein refers to three primary reasons for the delay: 1) delays were caused because the Barberises were out of the country and often letters rogatory had to be sent in order to communicate; 2) delays were caused because of the investigation, conciliation and ultimate settlement of the companion case filed by Suburban Maryland Fair Housing, Inc.; and 3) delays were caused because Lewis & Silverman went out of business, which made interviewing individuals and collecting documents more difficult.[22]

Under the circumstances, failure to meet the 100 day limit does not deprive this court of jurisdiction.

> There is nothing in the language of section 3610 that can fairly be construed as imposing a jurisdictional limit.... The plain language of this section indicates that Congress anticipated situations in which the investigation could not be completed within 100 days, and qualified its mandate ('shall') with an exception ('unless').

*United States v. Beethoven Associates Limited Partnership,* 843 F.Supp. 1257, 1261 (N.D.Ill.1994). *Accord Baumgardner v. Secretary, United States Department of Housing and Urban Development,* 960 F.2d 572, 578 (6th Cir.1992); *United States v. Nally,* 867 F.Supp. 1446, 1451 (N.D.Cal.1994); and *United States v. Forest Dale, Inc., supra* at 965–66. *See also* James A. Kushner, *Fair Housing 2d. Ed.,* § 8.29 at n. 959 (1995). The only case cited against this proposition, *United States v. Aspen Square Management Co.,* 817 F.Supp. 707 (N.D.Ill.1993), was later vacated. *See Beethoven* at 1260; *United States v. Gorman Towers Apartments,* 857 F.Supp. 1335, 1338 (W.D.Ark.1994). Courts which have addressed the almost identical issue in the context of Title VII have reached similar conclusions. In *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Supreme Court considered and rejected the argument that language limiting time for EEOC action barred that agency from filing suit under Title VII. Similarly, in *Tuft v. McDonnell Douglas Corp.,* 517 F.2d 1301, 1307 (8th Cir.

---

**21.** Defendants have moved to strike Goldstein's affidavit and the accompanying letter on the basis that Goldstein lacks personal knowledge. In reviewing the letter and the documents to which Goldstein refers, it seems that any "discussions" which Goldstein may have had with investigators simply supported items which Goldstein had himself learned from admissible documents contained in the administrative record prior to completing and signing his affidavit. Therefore, defendants' said motions to strike are hereby denied.

**22.** *See* Goldstein letter at page 1.

1975), *cert. denied* 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976), the court stated:

[t]he use of this language—'as promptly as possible and, so far as practicable'—demonstrates that Congress did not set specific administrative deadlines.... [A]dministrative enforcement of Title VII does not cease at the end of 180 days, and thus, the 180–day provision does not serve as a deadline for the commission...."

The government argues that the 100 day provision in the FHA is intended to hasten access to resolution, not prevent court access should the administrative agency fail to act, and that if the 100 day limit is read as a time bar, it could effectively cut off the government's right to enforce the law. Congress seemingly recognized the administrative burden which would be placed on HUD by requiring action within 100 days and added the "unless it is impracticable to do so" language. In *Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986), Justice Marshall stated: "[w]e would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." *Brock* involved the U.S. Department of Labor's procedural failures with regard to the Comprehensive Employment and Training Act. *See also EEOC v. Kimberly–Clark Corp.,* 511 F.2d 1352, 1357 (6th Cir.), *cert. denied* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975). Further, in *NLRB v. J.H. Rutter–Rex Mfg. Co.,* 396 U.S. 258, 265, 90 S.Ct. 417, 421, 24 L.Ed.2d 405 (1969), the Supreme Court stated "the Board is not required to place the consequences of its own delay, even if inordinate, upon wronged employees to the benefit of wrongdoing employers." *(citations omitted).*

Despite the acknowledged delay of more than 100 days, defendants are unable able to show how they are prejudiced by HUD's failure to act other than by saying that HUD's delay was unreasonable or that because HUD took so long, the action should be barred under the doctrine of laches. In *Baumgardner, supra* at 579, the court emphasized the need to show that the defendant was prejudiced by HUD's failure to meet the statutory and regulatory provisions. In *United States v. Casitas Capistrano Ass'n.,* C.A. No. 92–2723 DWW (C.D.Cal.1993), the court refused to dismiss an FHA action where HUD waited more than twenty-five (25) months to file a reasonable cause charge because there was no prejudicial effect to the defendant. Similarly, in cases before the Equal Employment Opportunity Commission ("EEOC"), the showing of prejudice is paramount before a defendant's motion to dismiss is granted.

When an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action. Instead, the error should be considered harmless. *(citations omitted).* This is the rule especially when the agency is not itself adjudicating but is conducting pre-adjudication activities.

*EEOC v. Kimberly–Clark Corp., supra* at 1360–61. *See also* 2 Larson, *supra,* at § 48.41(a)(3). In the instant case, defendants have not shown any prejudicial effect resulting from HUD's having taken more than 100 days to issue the reasonable cause charge.

(9) For the reasons set forth, *supra,* this Court hereby denies defendants' motions for summary judgment.

(10) It is so Ordered.